# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

WILLIAM R. DEMARIA, JR.,

       Defendant.

_____/

CIVIL ACTION NO. 8:00CV1507-T-27F 30

## CONSENT JUDGMENT

This matter is before the Court upon the consent of the Parties and it appearing to the Court, by the Parties consent hereto, that:

1.     This Court has jurisdiction over the parties as well as over the subject matter of this action.

2.     The defendant is indebted to the plaintiff for the reasons set forth in the Complaint filed herein; and

3.     The Parties desire to terminate this cause of action in accordance with the terms and conditions set forth herein and as set forth in the Settlement Agreement executed by the Parties and attached hereto as "Exhibit A."

4.     Pursuant to the attached Settlement Agreement, defendant agrees and consents to judgment being entered in favor of the plaintiff, United States of America, and against defendant, William R. DeMaria, Jr., for damages in the amount of $1,825,000, with payment of $1,825,000 accepted by plaintiff, United States of

America, in full settlement and satisfaction of this suit as set forth in the attached Settlement Agreement.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be entered in favor of plaintiff, United States of America, and against the defendant, William R. DeMaria, Jr., for damages in the amount of $1,825,000, with payment of $1,825,000 accepted by plaintiff, the United States of America, in full settlement and satisfaction of this suit as set forth in the following amounts:

1.      The principal sum of $1,825,000 with $850,000 due on or before the date of sentencing in the Criminal Case No 8:00-cr-269-T-27E and $975,000 payable on or before the fifth anniversary of the execution of the Settlement Agreement and in accordance with the terms and conditions set forth therein.

2.      Interest accruing on the balance due at the date of signing of the attached Settlement Agreement and thereafter at a rate of 6.375% per annum until paid in full.

1.      Administrative/collection costs in the sum of $____0_____.

2.      United States Marshal's fee in the amount of $___ 0_____.

ORDERED, ADJUDGED and DECREED at Tampa, Florida this _____

day of_____ 2000.


IT IS SO ORDERED.

DONE and ORDERED this *30* day of *Aug* · 2000, in chambers in

Tampa, Florida.

_____
UNITED STATES DISTRICT JUDGE


AGREED TO AS TO FORM AND SUBSTANCE

**DONNA A. BUCELLA**
United States Attorney

By: _____
      **WHITNEY L. SCHMIDT**
Affirmative Civil Enforcement Coordinator
Assistant U. S. Attorney
Office of the United States Attorney
Middle District of Florida
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
(813) 274-6000

RECEIVED

## IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

00 JUL 24  PM 3: 26

CLERK, DISTRICT OF FLORIDA
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA,

       **Plaintiff,**

v.                                **CIVIL ACTION NO.**

WILLIAM R. DEMARIA, JR.,

       **Defendant.**

_____/

## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement ("Agreement") is entered into between the United States

of America, acting through the United States Attorney for the Middle District of Florida and

on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and

Human Services ("HHS") and the TRICARE Management Activity (TMA), (also known as

the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS")) of the

Department of Defense, (collectively the "United States"); and **WILLIAM R. DEMARIA, JR.**

**("DeMaria"),** (hereafter referred to as "the Parties"), through their authorized

representatives.  This Agreement is part of a global settlement between the United States

and **DeMaria**, wherein all of **DeMaria's** criminal and civil liabilities as to the United States

of America in the Middle District of Florida are finally settled as set forth in this Agreement.

As such, the financial payment **DeMaria** promises to make to the United States, as set

forth herein, covers the criminal restitution and fines set forth in his plea agreement with

the United States, dated July 24th, 2000, as well as any civil liability arising from the



EXHIBIT

A

allegations in the civil complaint attached hereto.  The schedule of payments by **DeMaria** shall be in accordance to the terms and conditions of his above-referenced plea agreement and this Settlement Agreement and allocated pursuant to 18 U.S.C. § 3612.   This Agreement is based on the following:

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.     Investigators of the Office of Inspector General, United States Department of Health and Human Services (HHS), Federal Bureau of Investigation (FBI), Internal Revenue Service (IRS), and Defense Criminal Investigation Services (DCIS), conducted an investigation of **DeMaria** in the Middle District of Florida starting on or about the time period beginning in 1990 and continuing through December 31, 1995.  The investigation concerned **DeMaria's** participation in the business of patient brokering through which **DeMaria** would buy psychiatric and substance abuse patient referrals and sell those referrals to in-patient treatment facilities in Florida and elsewhere.

B.     During the relevant period, **DeMaria** was not a counselor or other type of mental health or substance abuse care professional, nor was **DeMaria** licensed as such. **DeMaria** was an entrepreneur who did not render any healthcare service or therapy.

C.     The United States contends that **DeMaria** submitted or caused to be submitted claims for payment to the Medicare Program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg(1999), and the TRICARE program (also known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS")), 10 U.S.C. §§ 1071-1106.

2

D.      The United States contends that it has certain civil claims against **DeMaria** under the False Claims Act, 31 U.S.C. §§ 3729-3733, other federal statutes and/or common law doctrines, for engaging in certain conduct as alleged in the civil complaint against **DeMaria** filed in the United States District Court for the Middle District of Florida, captioned *United States of America v. William R.. DeMaria*, Civil Action No.8:00-cv-1507-T-27F (the "Complaint") on August 8, 2000.  The Complaint alleges generally that **DeMaria** and others engaged in certain schemes in the Middle District of Florida to defraud Medicare and TRICARE programs from the beginning of 1990 through December 31, 1995. These actions are described more specifically in paragraphs sixteen through twenty-two of the Complaint.  The Complaint alleges generally that **DeMaria** engaged in patient brokering schemes in which he bought and sold psychiatric and substance abuse patient referrals to in-patient treatment facilities in Florida; that he authorized and/or paid kickbacks in exchange for the referral of Medicare and TRICARE beneficiaries; and that he submitted or caused the submission of false claims to Medicare and TRICARE.  These claims were false because they sought reimbursement for expenses that were not incurred; were not reimbursable; and/or were for services that were not rendered, including but not limited to, claims for management fees and expenses associated with payroll deductions and ghost employees.  The conduct described above committed in the Middle District of Florida is hereinafter referred to as the "Covered Conduct."

E.      The United States also contends that it has certain administrative claims against **DeMaria** under the provisions for exclusion from the Medicare, Medicaid and other

3

Federal health care programs, 42 U.S.C. § 1320(A)(B) and the provisions for civil monetary

penalties, 42 U.S.C. § 1320a-7a, for the Covered Conduct.

### III. <u>TERMS AND CONDITIONS</u>

NOW, THEREFORE, in consideration of the mutual promises, covenants, and

obligations set forth below, and for good and valuable consideration as stated herein, the

Parties agree as follows:

1.      **DeMaria** agrees to pay to the United States one million eight hundred

twenty five thousand dollars ($1,825,000) (the "Settlement Amount"), as follows: **DeMaria**

will pay eight hundred fifty thousand dollars ($850,000) to the United States on or before

the date of sentencing in the <u>Criminal Case No 8:00-cr-269-T-27E</u>. The remaining balance

due of nine hundred seventy five thousand dollars ($975,000) under this Settlement

Agreement will be paid in twenty (20) equal, consecutive quarterly installments of thirty

thousand dollars ($30,000) each, plus interest, due the first day of each quarter

commencing with the first quarter after the execution of this Settlement Agreement,

commencing on <u>October 1, 2000</u>  and continuing on the first day of each quarter month

thereafter through <u>July 1, 2005 ,</u> with a balloon payment for the remaining balance of three

hundred seventy five thousand dollars ($375,000), plus interest, and any amount due and

owing on the fifth anniversary of the execution of the Settlement Agreement .  At the sole

discretion of the United States, on or before the fifth anniversary date of the execution of

the Settlement Agreement, and conditioned upon **DeMaria's** financial status at that time,

an additional two year payment term, plus interest, will be granted to **DeMaria.** Defendant

agrees to pay interest at a rate of <u>6.375%</u> per annum on the remaining unpaid principal

balance of nine hundred seventy five thousand dollars ($975,000). **DeMaria** agrees to make payment of the Settlement Amount by electronic funds transfer to the Federal Reserve Bank pursuant to written instructions to be provided by the United States Department of Justice. The instrument shall contain the identifying information as detailed in Exhibit A. **DeMaria** agrees to make this electronic funds transfer on or before the sentencing in the criminal case referenced above..

2. As security for his obligation under this Agreement, **DeMaria** will grant to the United States security interest(s) in certain assets owned or controlled, in whole or in part, by **DeMaria,** as reported in his financial disclosure statement provided to the United States and dated February 10, 2000. **DeMaria** warrants that he has marketable title to said property, subject only to recorded encumbrances, and the property has an equity value exclusive of all other encumbrances that exceeds fair market value of said property. **DeMaria** will execute and deliver to the United States Attorney's Office for the Middle District of Florida, not later than ninety (90) days from the execution of this Settlement Agreement, a Security Agreement, Mortgage or Deed of Trust, and the appropriate Uniform Commercial Code documents (as applicable), for said property, which will be further identified and attached to this Agreement as Exhibit B. Should any of the above documents subsequently be deemed not legally sufficient by the United States, **DeMaria** agrees to provide the appropriate legally sufficient documents, or the United States may declare this Agreement to be in default. **DeMaria** warrants that if any party owns an interest in said property, he has caused such party to execute the Deed of Trust or Mortgage. **DeMaria** agrees to pay all fees and taxes related to recordation of the above

5

documents.  **DeMaria** also agrees to perform all acts required for the United States to perfect its security interest, or the United States may declare this Agreement to be in default.

       3.     **DeMaria**, during any time of incarceration, agrees to voluntarily make, or cause to be made, annual and balloon payments for the five year period as described in paragraph one (1) of this Agreement.  Upon release, **DeMaria** will be considered in default of this Agreement if he fails to make payments or pay any amount(s) due and owing in accordance with paragraph one (1) for a period of more than ten (10) business days.

       4.     On the date of any such event of default as defined in paragraph three (3) above, the United States agrees that it will provide written notice of the default and an opportunity for **DeMaria** to cure said default within ten (10) business days of receipt of the notice.  Notification of default will be sent by first class mail addressed to **DeMaria's** home or business addresses provided in this Agreement.  Upon default, the full remaining unpaid balance (including all unpaid interest and principal) will become immediately due and payable.

       5.     Upon declaration of default, the United States may exercise, at its sole option, one or more of the following rights, as applicable: (a) declare this Agreement breached, and proceed against **DeMaria** for any claims under the Complaint, including those to be released by this Agreement; (b) file an action for specific performance of the Agreement; (c) offset the remaining unpaid balance, inclusive of interest, from any amounts due and owing to **DeMaria** by any department, agency, or agent of the United States at the time of default; (d) exercise any other right granted by law, or under the terms

of this Agreement, or recognizable at common law or in equity.   **DeMaria** agrees not to contest any offset imposed pursuant to this provision, either administratively or in any State or Federal court.   In addition, **DeMaria** will pay the United States all reasonable costs of collection and enforcement of this Agreement, including attorney's fees and expenses. The United States reserves the option of referring such matters for private collection.

6.      Subject to the exceptions in Paragraph eight (8) below, in consideration of the obligations of **DeMaria** set forth in this Agreement, and conditioned upon **DeMaria's** payment in full of the Settlement Amount , and subject to Paragraph seventeen (17) below,  the United States (on behalf of itself, its officers, agents, agencies and departments) agrees to release **DeMaria** from any civil or administrative monetary claim the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C.

§ 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, and unjust enrichment, for the Covered Conduct within the Middle District of Florida.

7.      It is further understood that civil and administrative releases provided in this Agreement are limited in scope and are only those which can be given by the United States Attorney for the Middle District of Florida and OIG-HHS and TMA.   Except as otherwise expressly specified herein, this Agreement does not bind or preclude any other federal, state or local authorities from taking action against **DeMaria**.  However, the United States Attorney for the Middle District of Florida will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8.     Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including **DeMaria)** are any and all of the following:

(a)     Any civil, criminal or administrative claims arising under Title 26, U.S. Code (Internal Revenue Code);

(b)     Any criminal liability;

(c)     Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

(d)     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

(e)     Any claims based upon such obligations as are created by this Agreement;

(f)     Any express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services, provided by **DeMaria.**

(g)     Any claims for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

(h)     Any claims based on a failure to deliver items or services due;

(i)     Any claims against any individuals, other than **DeMaria,** including officers and employees;

(j)     Any liability, civil, criminal or administrative, to the United States or person for any conduct occurring, in whole or part, outside the Middle District of Florida.

8

9.     In compromise and settlement of the rights of OIG-HHS to exclude **DeMaria** pursuant to  42 U.S.C. § 1320a-7(a), **DeMaria** agrees to permanent exclusion under this statutory provision from participation in Medicare, Medicaid, and all other federal health care programs as defined in 42 U.S.C. § 1320a-7b(f).  Such exclusion will have national effect and will also apply to all other Federal procurement and non-procurement programs. While **DeMaria** is excluded, Federal health care programs will not reimburse **DeMaria** or any else for items or services, including administrative and management services, furnished, ordered or prescribed by **DeMaria** in any capacity.   This period is to commence on the effective date of this Agreement by **DeMaria**, and **DeMaria** waives any further notice of the exclusion.   **DeMaria** agrees not to contest such exclusion either administratively or in any State or Federal court.   If **DeMaria** submits or causes the submission of claims while excluded,  **DeMaria** is subject to the imposition of additional civil monetary penalties and assessments.   **DeMaria** further agrees to hold the Federal health care programs, and all Federal beneficiaries and/or sponsors, harmless from any financial responsibility for services furnished, ordered or prescribed to such beneficiaries or sponsors after the effective date of the exclusion.

10.     **DeMaria** has provided sworn financial disclosure statements ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. **DeMaria** warrants that the Financial Statements are thorough, accurate, and complete. **DeMaria** further warrants that he does not own or have an interest in any assets which have not been disclosed in the Financial Statements, and that **DeMaria** has made no

9

misrepresentations on, or in connection with, the Financial Statements. **DeMaria** agrees to provide, or cause to be provided, annual updated financial statements to the United States.  The financial condition of **DeMaria** will be evaluated once a year by the United States and payment terms may be accelerated based upon any material change in the financial status of **DeMaria** as determined by the United States.  In the event the United States learns of asset(s) in which **DeMaria** had an interest at the time of this Agreement which were not disclosed in the Financial Statements, or in the event the United States learns of a misrepresentation by **DeMaria** on, or in connection with, the Financial Statements, and in the event such nondisclosure or misrepresentation changes the estimated net worth of **DeMaria** set forth on the Financial Statements by a material amount,  the United States may at its option: (1) rescind this Agreement and reinstate its Complaint; or (2) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of **DeMaria** previously undisclosed. **DeMaria** agrees not to contest any collection action undertaken by the United States pursuant to this provision.

11.   In the event that the United States, pursuant to paragraph ten (10) above,  opts to rescind this Agreement, **DeMaria** expressly agrees not to plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims which (1) are filed by the United States within ninety (90) calendar days of written notification to **DeMaria** that this Agreement has been rescinded, and (2) relate to the Covered Conduct, except to the extent these defenses were available on <u>July 12, 2000</u>.

12.     **DeMaria** waives and will not assert any defenses **DeMaria** may have to any criminal prosecution or administrative action relating to the Covered Conduct, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, that this Settlement Agreement or any provisions thereof bars a remedy sought in such criminal prosecution or administrative action. **DeMaria** agrees that this settlement is not punitive in purpose or effect. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue Laws, Title 26 of the United States Code.

13.     **DeMaria** fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorneys fees, costs, and expenses of every kind and however denominated) which **DeMaria** has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.     **DeMaria** covenants to cooperate fully and truthfully with the United States' investigation of individuals and entities not specifically released in this Agreement, for the Covered Conduct. Upon reasonable notice, **DeMaria** will make reasonable efforts to facilitate access to, and encourage the cooperation of individuals, and will furnish to the United States, upon reasonable request, all non-privileged documents and records in **DeMaria's** possession, custody or control relating to the Covered Conduct.

11

15.     This Agreement is intended to be for the benefit of the Parties, only, and by this instrument the Parties do not release any claims against any other person or entity.

16.     **DeMaria** expressly warrants that he has reviewed his financial situation and that he is currently is solvent within the meaning of 11 U.S.C. § 547(b)(3). Further, the Parties expressly warrant that, in evaluating whether to execute this Agreement, the Parties (i) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to **DeMaria**, within the meaning of 11 U.S.C. §547(c)(1), and (ii) have concluded that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange.

17.     In the event **DeMaria** commences, or a third party commences, within 91 days of any payment made under this Agreement, any case,  proceeding, or other action (a) under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have any order for relief of **DeMaria**'s debts,  or seeking to adjudicate **DeMaria** as bankrupt or insolvent, or (b) seeking appointment of a receiver, trustee, custodian or other similar official for **DeMaria** or for all or any substantial part of **DeMaria**'s assets, **DeMaria** agrees as follows:

a. **DeMaria's** obligations under this Agreement may not be avoided pursuant to 11 U.S.C. §547, and **DeMaria** will not argue or otherwise take the position in any such case, proceeding or action that: (i) **DeMaria's** obligations under this Agreement may be avoided under 11 U.S.C.  §547; (ii) **DeMaria** was insolvent at the time this Agreement was

12

entered into, or became insolvent as a result of the payment made to the United States hereunder; or (iii) the mutual promises, covenants and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to **DeMaria**.

b.   In the event that **DeMaria**'s obligations hereunder are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action or proceeding against **DeMaria** for the claims that would otherwise be covered by the releases provided in Paragraph six (6) above.  If the United States chooses to do so, **DeMaria** agrees that (i) any such claims, actions or proceedings brought by the United States (including any proceedings to exclude **DeMaria** from participation in Medicare, Medicaid, or other federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. §362(a) as a result of the action, case or proceeding described in the first clause of this Paragraph, and that **DeMaria** will not argue or otherwise contend that the United States' claims, actions or proceedings are subject to an automatic stay; (ii) that **DeMaria** will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any such civil or administrative claims, actions or proceeding which are brought by the United States within ninety (90) calendar days of written notification to **DeMaria** that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on July 12, 2000 and (iii) the United States has a valid claim against **DeMaria** in the amount of **one million eight**

13

**eight hundred twenty five thousand dollars ($1,825,000),** and the United States may pursue its claim, inter alia, in the case, action or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c.   **DeMaria** acknowledges that his agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

18.   Each party to this Agreement will bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.   **DeMaria** represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

20.   This Agreement is governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement will be the United States District Court for the Middle District of Florida.

21.   This Agreement  constitute(s) the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

22.   The undersigned individuals signing this Agreement  represent and warrant that they are authorized to execute this Agreement.  The undersigned United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

23.   This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

14

24.     This Agreement is effective on the date of signature of the last signatory to the Agreement.

25.     **DeMaria** hereby consents to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26.     This Agreement is binding on successors, transferees, heirs and assigns of the Parties.


FOR THE UNITED STATES


DATED: _7/24/00_          BY: _____

**WHITNEY L. SCHMIDT**
Affirmative Civil Enforcement Coordinator
Assistant U.S. Attorney
Office of the United States Attorney
Middle District of Florida
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
(813) 274-6000


DATED: _7/20/00_          BY: _____

**LEWIS MORRIS**
Assistant Inspector General
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of
Health and Human Services


DATED:_____          BY: _____

**ROBERT L. SHEPARD**
Deputy General Counsel
TRICARE Support Office
United States Department of Defense


16

26.     This Agreement is binding on successors, transferees, heirs and
assigns of the Parties.

FOR THE UNITED STATES

DATED:_____          BY:   _____
                          **WHITNEY L. SCHMIDT**
                          Affirmative Civil Enforcement Coordinator
                          Assistant U.S. Attorney
                          Office of the United States Attorney
                          Middle District of Florida
                          400 North Tampa Street, Suite 3200
                          Tampa, Florida 33602
                          (813) 274-6000

DATED:_____          BY:   _____
                          **LEWIS MORRIS**
                          Assistant Inspector General
                          Office of Counsel to the Inspector General
                          Office of Inspector General
                          United States Department of
                                  Health and Human Services

DATED: 7-21-00            BY:   _____
                          **ROBERT L. SHEPARD**
                          Deputy General Counsel
                          TRICARE ~~Support Office~~ *MANAGEMENT ACTIVITY*
                          United States Department of Defense

16

*GREENFIELD*

FOR THE DEFENDANT

DATED: 7/12/2000                BY: _____
                               **WILLIAM R. DEMARIA, JR.**


DATED: 7/11/2000               BY: _____
                               **BENJAMIN BRAFMAN, ESQUIRE**
                               Counsel for William R. DeMaria

17